## MASHBURN v. TEX–KEN OIL CORPORA-
## TION et al. (No. 1641.)

(Court of Civil Appeals of Texas. El Paso. April 24, 1924.)

**1. Master and servant ⬤⇒332(3)—Evidence held insufficient to require submission of question of relation of parties.**

In action for personal injuries, evidence *held* insufficient to require submission to jury of question whether plaintiff was employee of defendant or of independent contractor, and court properly instructed verdict for defendant.

**2. Master and servant ⬤⇒315—Employer of independent contractor not liable to his employees.**

One for whom work is done is not liable to employees of independent contractor for injuries caused by negligence of contractor.

Appeal from District Court, Shackelford County; W. R. Ely, Judge.

Suit by Robert Mashburn against the Tex-Ken Oil Corporation and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Ben L. Cox and Thos. E. Hayden, Jr., both of Abilene, for appellant.

H. A. Turner, of Fort Worth, for appellees.

HARPER, C. J. Appellant filed this suit against Tex-Ken Oil Corporation and Conley and Hopper for $20,000 damages for personal injuries, and for cause of action alleged that he was at the time of the injury employed by the defendants as a laborer, and paid a salary by them; that defendants were engaged in a joint undertaking, to wit, drilling an oil well, and were to share in the revenues and profits; that Conley and Hopper were employees of the Tex-Ken Oil Corporation, and drawing salaries; that Conley was the foreman of defendants, and charged with the duty of supervising the work and employing laborers, and defendant corporation paid the wages; that he was employed as a pumper; the pump was old, defective, and worn out, and it became necessary to repair it, and that while engaged in such repairs he was driving a liner into the pump, and Conley was holding a hammer against the liner for plaintiff to drive, and that as he was about to strike it Conley negligently moved the hammer so that plaintiff was caused to miss it and strike the side of the pump, and thereby a sliver was broken off and struck him in the eye. It was further alleged that the Tex-Ken Oil Corporation was guilty of negligence in failing to furnish a suitable pump.

The Tex-Ken Oil Corporation answered by general and special exceptions, general denial, and denied that Conley and Hopper were its partners, and specially pleaded that the latter were protected by an insurance policy under the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz).

Conley and Hopper answered by general denial, and pleaded that they had qualified under the Texas Employers' Insurance Association. Upon this ground the plaintiff dismissed as to Conley and Hopper.

The court instructed a verdict for defendant Tex-Ken Oil Corporation, from which plaintiff appealed.

The contention here is that the court erred in instructing a verdict.

First. Because there is evidence sufficient to require submission to the jury as to whether plaintiff was an employee of the Tex-Ken Oil Corporation.

Third. Because there is evidence of injuries and evidence tending to prove that said defendant was guilty of the negligence charged.

The appellant first stated that he was employed by the Tex-Ken Oil Corporation, and it paid his salary by check of $4 per day. Upon cross-examination he testified: "My contract was with Mr. Conley. He hired me."

The only other testimony which might tend to prove that plaintiff was an employee of the oil company is that its Texas representative testified that he issued the checks in payment of the salaries and wages of the men doing the work directly to them instead of in bulk, by request of the foreman, instead of as provided by the contract with Conley and Hopper. This contract, as pertinent to the points presented here, reads:

"State of Texas, County of Tarrant.

"Whereas, the Tex-Ken Oil Corporation, a corporation, is the owner of a good, valid, and subsisting oil and gas lease dated December 14th, 1917, wherein F. R. Hubbard and wife, Ora L. Hubbard, are the lessors, and S. B. Hughes is the lessee, covering surveys Nos. seventy-five, one hundred eighteen and one hundred twenty, University lands located in Shackelford and Callahan counties, Texas, said lease being recorded in Book 67, page 398, and Book 48, page 427, respectively, of the Deed Records of said Shackelford and Callahan counties, Texas; and

"Whereas, Conley and Hopper, a partnership composed of H. N. Conley and G. R. Hopper, is the owner of a good, valid and subsisting oil and gas lease dated the —— day of ——, A. D. 1921, wherein T. E. Hayden is the lessor and said Conley & Hopper are the lessees, covering survey No. 78, University lands, located in Shackelford county, Texas, and surveys Nos. one hundred sixteen and one hundred nineteen, University lands, located in Callahan county, Texas; and

"Whereas, both said parties are desirous of developing said lands for oil and gas, and operating the same as oil and gas farms;

"Now, therefore, it is mutually agreed by and between the said Tex-Ken Oil Corporation, hereinafter called party of first part, and the said Conley and Hopper, hereinafter called party of second part, as follows:

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Each of said parties hereto shall furnish the one to the other, within ten days from this date, a complete abstract of title to the said respective surveys for examination, and said parties shall have ten days from the date of the delivery of said abstracts of title to them in which to examine the same and to point out their objections thereof, if any, in writing and submit the same to the other party, who shall have ten days in which to cure said objections, failing in which this contract shall be of no further force or effect, but accomplishing which the parties hereto shall make the one to the other an assignment of an undivided one-half interest in and to their said respective leases, which assignments, together with a copy of this contract, shall be placed in escrow in the Fort Worth National Bank of Fort Worth, Texas, to be held by it under the agreements and conditions hereinafter set forth, to wit: * * *

"Party of second part to furnish all the necessary tools and casing for drilling the test well for oil and gas heretofore commenced on Survey No. 118. * * * [Then it provides that if the test well proves to be a producer then the assignments to be delivered by the bank to the respective assignees, but if dry then to be delivered to the respective assignors.]

"III. Party of first part shall pay all necessary costs and expenses for placing the tools and casing for drilling said test well on said lease, and shall at its own -cost and expense place a water tank, with a capacity of at least two hundred fifty barrels and a line pipe for water and gas, on said lease, necessary for the drilling of said test well; and in the event said test well produces oil or gas in commercial quantities, as · hereinbefore stated, then the cost and expenses of flow tanks, storage tanks, and all connections shall be borne equally by the parties hereto.

"IV. All contracts for labor and teaming necessary for the drilling of said test well shall be made by Conley and Hopper in their own behalf, but party of first part shall pay all the necessary costs and expense for such teaming and for the necessary labor for the drilling of said test well, the labor to consist of two drillers at $10.00 each per day, two tool dressers at $9.00 each per day and one pumper at $4.00 per day; said costs and expenses for labor and teaming to be first approved by Mr. Madden, and shall be paid on the tenth and twenty-fifth of each month after the bill for such labor and teaming have been presented to said party of first part at Fort Worth, Texas; provided, however, that party of first part shall not pay any expenses in connection with the drilling of said test well during any period of time the same may for any reason, be suspended or shut down.

"V. Party of first part agrees to pay to H. N. Conley for expenses, etc., for superintending the drilling of said test well the sum of $200.00 per month during the continuation of actual drilling operation on said test well.

"VI. In the event said test well shall be a dry hole, party of second part shall furnish the necessary tools and plug said well, but the necessary expenses of plugging said well shall be borne by party of first part."

"IX. Should oil or gas production in com-mercial quantities be developed in said test well the cost of operating the same shall be borne pro rata by the parties hereto as their interests may appear."

The vice president and treasurer of the oil corporation testified that the Tex-Ken Oil Corporation did not employ plaintiff; and again: .

"By request Conley sent in statement containing names of laborers employed and issued checks to them for whatever amount Conley & Hopper said was due them."

[1, 2] Under this testimony, and especially this contract, being undisputed, neither Conley nor plaintiff were employees of the oil corporation, but of Conley & Hopper, independent contractors; for that reason the Tex-Ken Oil Corporation could not be held liable for the negligence of Conley, if in fact there was any negligence charged. In fact, the peremptory charge given by the court recites that it was agreed that the Tex-Ken Oil Corporation and Conley and Hopper were not partners, and this recital is not challenged. Higrade Lignite Co. v. Courson, 219 S. W. 230. The propositions raise questions of law which would be well taken but for the fact that the evidence does not support them. The court, therefore, did not err in charging the jury to find for the defendant. .

Affirmed.